IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAMELA E. LONG,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

        Defendant.
_____

Civ. No. 3:12-cv-1688-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Pamela Long brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (42 U.S.C. §§ 401-34). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

    Long applied for DIB on February 12, 2004, tr. 115, alleging a date of disability onset of December 26, 2000, tr. 115, 149 & 1235. These claims were denied initially on April 12, 2004, tr. 94-98, and upon reconsideration on November 10, 2004, tr. 90-92. Plaintiff timely requested a hearing before an administrative law judge (ALJ), and appeared before the Honorable Ralph W. Jones on May 1, 2004. Tr. 1201-31. ALJ Jones denied plaintiff's claim by written decision dated May 23, 2007. Tr. 55-63. Plaintiff sought review from the Appeals Council, which remanded the

1 – OPINION AND ORDER

case to the ALJ by written order dated July 31, 2009. Tr. 36. This order directed the ALJ to conduct further inquiry into the nature and severity of plaintiff's impairments. Tr. 103. Plaintiff appeared before the Honorable Catherine R. Lazuran on June 30, 2010. Tr. 1232-88. ALJ Lazuran denied plaintiff's claim by written order dated July 16, 2010. Tr. 24-35. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 8-11. Plaintiff now seeks judicial review.

Plaintiff, born on February 8, 1956, completed high school and beauty school. Tr. 33. Plaintiff was fifty on her date last insured (June 30, 2006), and fifty-four at the time of her second hearing (June 30, 2010). Pl.'s Br. 2, ECF No. 15. Plaintiff alleges disability beginning December 26, 2000, Tr. 115, due to ovarian cancer, hepatitis C, hepatitis B, neuropathy, a torn rotator cuff, numb hands, multiple sclerosis, depression, overactive thyroid, post-traumatic stress disorder, chronic obstructive pulmonary disease, coronary artery disease, brain lesion, heart murmur, irritable bowel syndrome, chronic uterine prolapse, cervical disc disease, and pain. Tr. 148, 192 & 218.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520 (2012). At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC),[1] age, education, and work experience. *Id*.

Plaintiff contends that ALJ Lazuran erred in her consideration of examining psychologist Caleb Burns's (Dr. Burns) opinion in the sequential evaluation. Plaintiff makes two arguments: first, ALJ Lazuran improperly rejected the opinion of Dr. Burns; and second, ALJ Lazuran's RFC assessment improperly excluded the limitations described by Dr. Burns.

## I. Consideration of Dr. Burns's Opinion

Plaintiff contends that ALJ Lazuran implicitly rejected the opinions in Dr. Burns's report by failing to address the results of Dr. Burns's objective testing and by mischaracterizing Dr. Burns's opinions and results. Pl.'s Br. 5, ECF No. 15. In response, defendant contends that ALJ Lazuran, with the assistance of reviewing psychologist Dr. Margaret Moore (Dr. Moore), did not reject or mischaracterize Dr. Burns's opinion, but rather "translated" Dr. Burns's opined limitations into work-related functional limitations. Def.'s Br. 6, ECF No. 21. This Court first turns to Dr. Burns's evaluation of plaintiff.

Dr. Burns administered plaintiff's neuropsychological evaluation on October 9, 2006. This neuropsychological evaluation consisted of an interview, mental status examination, and

---

[1] A claimant's RFC is the most the individual can do despite her limitations. 20 C.F.R. § 404.1545(a) (2012).

3 – OPINION AND ORDER

various psychological tests.[2] Tr. 818. From the interview and mental status examination, Dr. Burns made multiple observations. Plaintiff emphasizes that Dr. Burns characterized her as "quite gaze-avoidant" and as exhibiting "attention and concentration" affected by emotionality. Tr. 827. Plaintiff also points out that Dr. Burns's needed to "repeat questions" and that he made repeated references to her emotionality.[3] From the psychological testing, Dr. Burns concluded that the evaluation results "indicate substantial memory deficits" and place plaintiff in "the borderline range of intellectual ability." Tr. 830. However, "[Dr. Burns] did not assess whether [plaintiff] could perform unskilled work on a sustained basis." *See [Stubbs-Danielson v. Astrue](#)*, 539 F.3d 1169, 1173 (9th Cir. 2008). Thus, ALJ Lazuran looked to Dr. Moore for her interpretation of plaintiff's work-related functional limitations.

Dr. Moore testified at plaintiff's second hearing on June 30, 2010, that she broadly agreed with the diagnosis of borderline intellectual functioning, but thought that the specific test results were "more related to learning problems as opposed to an overall blanket difficulty." Tr. 1274. In commenting on Dr. Burns's evaluation, Dr. Moore stated that "[o]verall, I think that what [Dr. Burns] found likely seems to be about what [plaintiff's] functioning would be." Tr. 1279. Ultimately, Dr. Moore opined that plaintiff was psychologically capable of "simple, repetitive tasks" and "more complicated activity," but with "limited interaction socially." Tr. 1277-78.

After considering the entire record, ALJ Lazuran found that plaintiff was not disabled under the Social Security Act. Tr. 34. Specifically, ALJ Lazuran concluded that plaintiff was capable of "simple, routine, repetitive tasks and some detailed ones involving minimal

---

[2] Dr. Burns used a variety of psychological tests, including: "the Wechsler Adult Intelligence Scale-III (WAIS-III), the Wechsler Memory Scale-III (WMS-III), Trail Making A and B, the Reitan-Indiana Aphasia Screening Test, the Reading subtest of the Wide Range Achievement Test-III (WRAT-III), and the Mood Assessment Scale." Tr. 818.
[3] For example, Dr. Burns reported that plaintiff "cried frequently in the course of th[e] evaluation." Tr. 827.

4 – OPINION AND ORDER

interaction socially." Tr. 33. As a result, plaintiff was found able to perform the position of mail clerk and electronics worker. Plaintiff argues that these findings, collectively, constitute an implicit rejection of Dr. Burns's opinion. Plaintiff's argument is unpersuasive.

Plaintiff first points to ALJ Lazuran's step three assessment. At step three, ALJ Lazuran found:

> At an October 2006 psychological evaluation with Caleb Burns, Ph.D., the claimant's attention and concentration were noted to be affected by emotionality . . . . However, there is no evidence of deficits in concentration or attention prior to or since these evaluations. Notably, in November 2006 she reported using methamphetamines 4 weeks prior. Dr. Burns and Dr. Rendleman were unaware of her recent methamphetamine use at the time of their evaluations. Dr. Burns saw the claimant only once and minimized her daily activities. The claimant was not honest with him concerning her methamphetamine use. Dr. Burns had no access to treatment records or exams, some of which describe the claimant as a poor historian. His assessment appears based on the claimant's subjective reports, which are not fully credible.

Tr. 28 (citations omitted). Plaintiff argues that these evidentiary comments constitute an implicit rejection of "at least some portion of" Dr. Burns's opinion. Pl.'s Br. 5, [ECF No. 15](). To put this commentary in perspective, at step four, ALJ Lazuran briefly discussed Dr. Burns's psychological testing results[4] and also referenced plaintiff's ability to concentrate during the psychological evaluation.[5] Perhaps more importantly, ALJ Lazuran explicitly relied upon Dr. Burns's evaluation to "support a finding that the claimant is capable of simple, routine, repetitive tasks and some detailed ones involving minimal interaction socially." Tr. 33. Thus, because ALJ

---

[4] "On a WAIS-II she attained a verbal score of 75, performance score of 92, and a full scale score of 81. [Psychological] [t]esting revealed memory deficits. She was diagnosed with major depression, memory deficits and borderline intellectual functioning and was assessed a GAF of 53." Tr. 32 (internal citations omitted).

[5] "She did not present as incoherent or markedly limited in her ability to concentrate when seen by Dr. Burns during the same month and she has not presented this way to any treating source or during either of her hearings." Tr. 33. Dr. Burns's own statements are not inconsistent with this assessment. For example, Dr. Burns's characterized plaintiff as "a reasonably good historian." Tr. 819.

5 – OPINION AND ORDER

Lazuran explicitly claimed to rely on Dr. Burns's opinion, the underlying issue is whether Dr. Burns's evaluation actually supports ALJ Lazuran's RFC finding.

To begin, ALJ Lazuran's RFC findings line up closely with those of Dr. Moore. *See, e.g.*, Tr. 33 & 1277. In expressing her opinion, Dr. Moore explicitly agreed with Dr. Burns's findings regarding plaintiff's functionality levels. Tr. 1279 (". . . seems to be about what her functioning would be."). Dr. Moore described plaintiff's social function, concentration, persistence, and page limitations as moderate. Tr. 1277. Dr. Moore also commented on plaintiff's difficulties with memory tasks[6] and drawing, but noted that plaintiff does better with her visual motor and perceptual half (as opposed to her verbal based half). Tr. 1275 & 1279.

Next, Dr. Burns's neuropsychological evaluation results appear to line up with Dr. Moore's testimony. As to the mental status evaluation, Dr. Burns noted that plaintiff timely arrived at the appointment, was cooperative, and her memory was "okay" for recent events, but "sometimes quite poor" for distant events. Tr. 827. Dr. Burns also noted that plaintiff's attention and concentration were affected by her emotionality, that she cried frequently, and that he had to repeat questions to her. *Id*. As to the psychological evaluation, Dr. Burns found that plaintiff placed in the borderline range of intellectual ability, exhibited significant deficits in memory functioning, but placed "very good" on the Perceptual Organization Index, facial recognition, and Spatial Span skills. Tr. 828-30. At no point did Dr. Burns assess whether the test results precluded plaintiff from performing unskilled work on a sustained basis (or any other type of work for that matter). Rather, Dr. Burns's ultimate conclusion focused on plaintiff's "substantial memory deficits" and placement on the "borderline range of intellectual ability." Tr. 830.

---

[6] Dr. Moore testified that "[plaintiff] had difficulty with arithmetic, digit scans. These are tasks that have to do with sustained focus and attention and specific mental acuity." Tr. 1279.

6 – OPINION AND ORDER

ALJ Lazuran translated plaintiff's condition into the only concrete restrictions available to her—Dr. Moore's recommended restriction to simple routine, repetitive tasks and some detailed ones involving minimal interaction socially. Tr. 1277-78; *see also Stubbs-Danielson*, 539 F.3d at 1174. Dr. Moore explicitly considered plaintiff's "memory deficits"—including plaintiff's concentration,[7] Tr. 1275, 1277 & 1279, and plaintiff's placement on the "borderline range of intellectual ability," Tr. 1274. In adopting Dr. Moore's opinion, ALJ Lazuran concluded that plaintiff's "mood disorder" was not severe, but "considered." Tr. 27. ALJ Lazuran further noted that she found little evidence of plaintiff's mood disorder prior[8] to her date last insured (June 30, 2006). Tr. 27 (citing Tr. 771). Accordingly, ALJ Lazuran's conclusion that plaintiff was not disabled must be upheld because it constitutes a rational interpretation of the evidence and is supported by substantial evidence on the record. *See, e.g.*, *Batson*, 259 F.3d at 1193; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## II. RFC Limitations

ALJ Lazuran called Vocational Expert (VE) Patricia Ayerza to testify as to whether plaintiff was capable of making an adjustment to other work. ALJ Lazuran asked VE Ayerza a series of hypothetical questions detailing plaintiff's limitations. Collectively, these questions

---

[7] Dr. Moore's opinion did not explicitly address the relationship between plaintiff's "emotionality" and her concentration. However, Dr. Moore did discuss plaintiff's depression. Tr. 1275-76. Specifically, Dr. Moore noted that plaintiff failed to follow up with mental health treatment and that "[plaintiff] basically has not been a person who really makes herself available to receive mental health services." Tr. 1276. To the extent that Dr. Moore's opinion discounted Dr. Burns's reference to plaintiff's "emotionality" in her concentration analysis, ALJ Lazuran provided specific and legitimate reasons for relying on Dr. Moore's opinion. These reasons included plaintiff's lack of concentration/attention deficit evidence prior to or since Dr. Burns's and Dr. Rendleman's evaluations, plaintiff's use of methamphetamines shortly before both evaluations, plaintiff's dishonesty during Dr. Burns's mental status examination, and Dr. Burns's lack of access to plaintiff's treatment records and exams. Tr. 28.

[8] Dr. Burns's neuropsychological evaluation of plaintiff occurred after plaintiff's date of last insured.

7 – OPINION AND ORDER

limited plaintiff's physical capabilities[9] and restricted plaintiff to "simple, routine, repetitive tasks" that "involve[d] some minimal interaction socially, including jobs that have some detailed tasks." Tr. 1285-87. Plaintiff argues that these limitations do not incorporate the limitations described by Dr. Burns—plaintiff's "attention and concentration" impairment and "substantial memory deficits." Pl.'s Reply Br. 2 & 4, ECF No. 25.

In *Stubbs-Danielson*, the Ninth Circuit joined the Sixth and Eighth Circuits in recognizing that an "ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony." 539 F.3d at 1174. The Ninth Circuit held that the ALJ's limiting instruction of "simple tasks" adequately incorporated an examining doctor's observations that plaintiff had a "slow pace, both with thinking and her actions" and was "moderately limited" in her ability to "perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 1173. Likewise, in *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001), the Court held that the ALJ's limiting instruction of "simple, routine, repetitive work" adequately accounted for "the finding of borderline intellectual functioning." Dr. Burns's opinion explicitly addressed plaintiff's "attention and concentration" only briefly, indicating that plaintiff's concentration was affected by her emotionality. Dr. Burns's opinion did not indicate the severity of plaintiff's attention or concentration limitations. In contrast, Dr. Moore explicitly described plaintiff's social function, concentration, persistence and page limitations as moderate. Tr. 1277. As in *Stubbs-Danielson*, ALJ Lazuran's hypothetical limitations, "simple, routine, repetitive tasks" and some "detailed tasks," adequately captured Dr. Burns's conclusions relating to

---

[9] ALJ Lazuran told VE Ayerza to "assume that the person is able to lift 20 pounds occasionally and 10 pounds frequently . . . . Can stand and walk six of eight hours and sit six of eight hours." Tr. 1285.

8 – OPINION AND ORDER

plaintiff's attention and concentration because this assessment is consistent with the medical testimony.[10] *See, e.g.*, *supra* § I; Tr. 1277.

As to Dr. Burns's "substantial memory deficits" finding, Dr. Burns did not assess whether these deficits precluded plaintiff from performing unskilled work on a sustained basis. Rather, this finding appears to be based primarily on the WMS-III test results. Tr. 829 (finding that plaintiff "exhibited significant deficits in memory functioning"). Dr. Burns only makes two other explicit references to plaintiff's memory—"[she] appeared to be a reasonably good historian," tr. 819, and "[h]er memory for recent events was okay but her memory for distant events was sometimes quite poor," tr. 827. As indicated *supra* § I, Dr. Moore, upon considering plaintiff's memory deficits, found plaintiff capable of performing "simple, routine, repetitive" and some "detailed tasks." Tr. 1277. Thus, ALJ Lazuran's hypothetical limitations also adequately captured Dr. Burns's conclusions relating to plaintiff's "substantial memory deficit" because this assessment is consistent with the medical testimony. *See, e.g.*, *supra* § II (footnote 10); Tr. 1274-1275 (discussing plaintiff's psychological testing results). Accordingly, based on a review of the record, this Court concludes that ALJ Lazuran's RFC finding properly incorporated the limitations identified by Dr. Burns.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED. This case is DISMISSED.

---

[10] During the course of her interview with Dr. Burns, plaintiff noted that she could use a telephone book, Tr. 823, read the newspaper, Tr. 824, and that she had been helping her daughter a lot—"running her here and there and going to meeting for her and going to doctors," Tr. 824. Plaintiff also noted that she worked on her mobile home—"I can *do it mentally* but not physically." Tr. 824 (emphasis added). Similarly, at a prior outpatient mental health assessment, plaintiff reported taking care of her grandchildren. Tr. 362.

9 – OPINION AND ORDER

IT IS SO ORDERED.

DATED this 4th day of November, 2013.

_____s/Michael J. McShane_____
Michael J. McShane
United States District Judge

10 – OPINION AND ORDER